**FILED**

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

## IN THE DISTRICT COURT

MAR 2 1 2012

## OF NEW MEXICO

**MATTHEW J. DYKMAN**
CLERK

## ALBURQUERQUE DIVISION

Ryan Delpratt

**V**

Case # 12 cv 288 JP/GBW

ICE

MTC

PNA

DR. David Mansfield

Lt. M. Clarke

L. Belvin

**EMERGENCY SUITE UNDER THE AMERICN DISABILITEES ACT TO COMPELL ICE, AND MTC (PRIVATE ACTOR), TO SURGICALLY REPAIR THE PLAINTIFF HIP, AND TO HOUSE HIM IN ACCORDANCE THE ADA LAW. AND ACTION UNDER 1983 FOR INDIFFERENCE TO SERIOUS MEDICAL NEEDS.**

Now come the plaintiff prose on his own, in accordance with federal law asks this court to move this suite forward, in support of this action, the plaintiff states the following.

Plaintiff, Ryan Delprat is currently detained at Otero county Processing Center, 26 McGregor Range Rd, Chaparral, Nm 88081 since May 26th, 2011, after being placed under removal proceedings.

1. The Plaintiff have a serious hip injury with one leg shorter that the other with a bone splint in his hip, and spinal pain.

**STATEMENT OF CLAIM**

ICE through its private contractors MTC and PNA and Dr David Mansfield is refusing to perform surgery on the plaintiff, by ignoring the medical records and doctors' orders, and showing deliberate indifference to his serious medical needs. Ice through its private contractor is refusing to adhere to the American with disabilities act, by refusing to provide the services that a disable person needs under the act.

**INJUNCTIVE RELIEF**

The need for injunctive relief is to prevent further harm to the defendant, and to ensure that he is treated like any other likely situated applicants. Surgery was recommended, but PNA told ICE that they are treating the problem with pain pills. The plaintiff asks this court to order the defendants to perform the surgery immediately.

In support of this action the plaintiff states the following:

1. The plaintiff is housed at Otero detention center, a county owned facility that is contracted by ICE to house immigration detainees.

2. PNA is a private medical provider contracted with ICE to provide medical care for detainees.

3. The plaintiff medical condition began to deteorate in October of 2011. He was having difficulties walking and requested a wheel chair.

4.  He was told that the facilities does not allow wheelchair. The plaintiff was told that if he did not walk on crutches he would be placed in the SHU, without crutches.

5.  The plaintiff protested by pointing out that this was a of the violation law. A sick and or disabled inmate cannot be punish in the SHU for being Sick.

6.  The plaintiff was placed in the SHU on November 3rd 2011 by Lt. M. Clarke, after having problems walking. The plaintiff protested by pointing out that this was a violation of federal law. Lt. M. Clarke said that this place does not follow federal law.

7.  The plaintiff was placed in the SHU on November 12th 2011 by Lt. L. Belvin, after having problems walking. The plaintiff protested by pointing out that this was a violation of the ADA law Lt. L. Belvin, Said that you do not have any rights here.

8.  The plaintiff was taken to see David j Mansfield, MD. Of the EL Paso Orthopedic Surgery Group and center for Sports medicine, 1700 Murchison El Paso, Texas 79902.

9.  Dr David Mansfield examine the plaintiff and took x-rays. He told the plaintiff that he had a serious hip problem and that he needed

immediate surgery. Dr Mansfield later wrote an unsigned report that told the MTC and PNA something different (exhibit *1* ).

10. Dr David Mansfield wrote what the patient was told about the problem. And mention that the patient was told that he was not a good candidate for the surgery because he was too young and as well as incarcerated. This is a total lie because when the previous diagnosis was made the plaintiff was not incarcerated.

11. In letters dated November 29, 2011 and December 8th, 2011. The plaintiff previous attorney wrote ICE, explaining the plaintiff problems. EX 3,4

12. In the response from Raymond Morris, Acting Assistant Field Office Director. He clearly state that PNA was taken good care of the plaintiff, and had schedule an Orthopedic appointment on November 29, 2011. And at this time there was no need to release the plaintiff. EX 2

13. This show that Dr David Mansfield diagnostic report was very important, as to whether the plaintiff would be released or not. EX 1

14. Dr David Mansfield prepared a report that was false in order to please his clients, MTC and PNA, and did not give the plaintiff a signed copy.

It is well established federal law that a detainee is due reasonable and adequate care. The plaintiff was diagnose  with this serious hip problem that only got worse because in part he did not wear his special shoes for the 10 months he was held here. The plaintiff was told that he had to wear the detention center shoes. The plaintiff leg is 4 inches shorter than the other, and a broken bone splint is lose in the plaintiff hip, and pelvis area. There is suchers and incision to prove it along with the x-rays that was taken. The only remedy for this problem is immediate surgery. Due to the inadequate and unreasonable care the plaintiff is forced to take pain pills and psychological pills in order to deal with the pain and frustration. Since the plaintiff need for surgery is the only option to correct the problem of his hip. Then surgery is the only reasonable option of correcting the problem.

## CLAIM AS TO DR DAVID MANSFIELD

### Dr Mansfield was deliberate indifferent to the plaintiff serious medical needs

Dr Mansfield was deliberate indifferent to the plaintiff serious medical needs, by examining the plaintiff and telling him that there was a broken bone splint in his hip, and that he needed immediate surgery, but failing to mention it on the unsigned report.  What constitutes necessary and proper medical care of the

plaintiff, in the absence of allegations of intentional negligence or mistreatment, must be left to the medical judgment of the prison physician, and cannot form the basis for a civil rights complaint. The Plaintiff does not claim to be the ultimate judges of what medical treatment is necessary or proper, and the plaintiff must place his in the report of a reputable physicians. The allegations by the plaintiff that he has received inadequate medical care can be proven or disproved by the plaintiff medical records.

The standard for what treatment rises to cruel and unusual punishment was set forth in Estelle v. Gamble. In that case, the Supreme Court reasoned that there must be facts and evidence to show a deliberate indifference to serious medical needs. Thus, simple negligence will not be sufficient to obtain a judgment against prison medical or security staff for inadequate treatment as a constitutional violation. The lack of medical treatment must be intentional; an accident or inadvertent failure to provide proper medical care is in sufficient to meet the Supreme Courts standard of deliberate indifference to serious medical needs.

In *Hathaway v. Coughlin*, the Second Circuit applied these standards and held that a prison doctor was deliberately indifferent to the prisoner's serious medical needs in that he knew of and disregarded an excessive risk to his health.

The doctor never informed the prisoner that he had two broken pins in his hip. The prisoner did not learn of his condition for one year after an X-ray. The presence of broken pins in a hip is information that would cause most people to consider surgery. Nonetheless, the doctor never shared this information with the prisoner nor raised the possibility of surgery with him following the discovery of the broken pins.

In the instant case Dr Mansfield told the defendant that he needs surgery but did not shared that information with his contractors on the unsigned report that he issued to MTC and PNA. This shows that Dr Mansfield was deliberately hiding the fact that the plaintiff needs surgery immediately. This reaches the standard of deliberate indifference to serious medical needs.

Deliberate indifference is also present in the ongoing delay between the discovery of the broken bone and the surgery not taken place. Despite requests for further evaluation and additional treatment, and the plaintiff constant complaints, MTC and PNA is still relying on Dr Mansfield unsigned and misleading report. This shows that the doctor did not take the prisoners condition seriously.

**CLAIMS AS TO MTC**

MTC as a private contractor have an obligation to comply with the American with disabilities act. The Supreme Court have already held that the ADA extends into prisons. The Americans with Disabilities Act became law in 1990. The ADA is a comprehensive statute that prohibits, under certain circumstances, discrimination based on disability. Disability is deem a physical or mental impairment that substantially limits a major life activity. Title II prohibits disability discrimination by all public entities at the local and state levels, including county jails and state prisons. They must comply with all Title II regulations issued by the U.S. Department of Justice. These regulations cover access to all programs and services offered by jails and prisons. Access includes physical access described in the ADA Standards for Accessible Design and programmatic access that might be obstructed by discriminatory policies or procedures of the entity.

In the instant case the plaintiff repeatedly ask for a wheel chair, and was told that he could not use a wheel chair at this detention center. The plaintiff was placed in the show twice because of this. The plaintiff was later housed in the medical but was eventually told to leave or go to the SHU. He was immediately placed in general population and had to use crutches and fend for himself, this included walking to eat, walking to medical and walking to the library on crutches.

This walking on crutches makes the problem worse on a daily basis, and increases the pain in the back and spine.

## CLAIM AS TO Lt. M. Clarke AND LT. Belvin

Lt. M. Clarke and L. Belvin disregarded the ADA laws by placing the plaintiff in the SHU. This was done after the plaintiff pointed out to them that a disable person cannot be placed in the SHU. The just said that they were following orders of the captain. They violated a clearly establish law that was in placed since 1990 and as lieutenants should have be trained on the requirement of the law. They cannot violate the law just to get a paycheck. This treatment is cruel and unusual punishment. It is like punishing a slave because he is sick, and using black overseers to do it. EX 5,6

## CLAIM AS TO PNA

PNA is aware of the problems that the plaintiff has, a PNA ex-ray technician took ex-rays of the plaintiff and show the damage to the plaintiff. The ex-ray technician told the plaintiff that the ex-rays will be given to the doctor. PNA

knows that immediate surgery is the only course of treatment for the problem, but continually provide pain pills to the plaintiff, and make every excuse about why he is not getting the surgery. PNA is telling ICE that the plaintiff is fine according to ICE. (exhibit 9). ICE is clearly relying on PNA recommendation in its response to the attorney complaints about the lack of treatment of the plaintiff.

An inmate is totally dependent upon the institution, and in this case the health care provider PNA, and cannot shop for services on the open market, and therefore must rely on them to his improvement or detriment. In this case the plaintiff condition is getting worse, the pain is moving up his back and his unused leg is getting smaller. The plaintiff have not received physical therapy in the 10 months he has been here. He is repeatedly told that this center is a short term center and does not have to provide such therapy.


**CLAIM AS TO ICE**


ICE is using deliberate will full ignorance in handling the medical needs of the plaintiff serious medical needs. ICE as the governmental custodian of the plaintiff has never spoke to the plaintiff in the 10 months that he has been here. ICE only reliance is on the purported statement of PNA, that the plaintiff is being

take care of with medication. It is well establish federal law that governmental

agencies cannot contract their responsibilities out to private contractors, and

their legal obligations with it. ICE and its agent are 100 yards away and they have

totally ignored the plaintiff, and have refused to talk to the plaintiff about his

medical needs. ICE is ultimately responsible for the plaintiff. According to the

letter the need for surgery is not mentioned.

The plaintiff if seeking $400,000. In damages, and attorney fees.

**PRAYS**

For the above stated reasons the plaintiff prays that this honorable court

will grant this emergency suite under the American with disabilities act to compel

ICE, and MTC (private actor), to surgically repair the plaintiff hip, and to house

him in accordance the ADA law. And action under 1983 for deliberate indifference

to serious medical needs.

## CERTIFICATE OF SERVICE

I Ryan Delprat certify that a true copy of this emergency suite under the American with disabilities act to compel ICE, and MTC (private actor), to surgically repair the plaintiff hip, and to house him in accordance the ADA law. And action under 1983 for deliberate indifference to serious medical needs. Was served on the USCIS office at 500 12th Street, SW Washington Dc 20536, and to the clerk of the court, and to all interested parties involved. Via United States Mail.

*Ryan Delpratt*

Ryan Delprat

A047112230

26 McGregor range rd

Chaparral, nm 88081

Dated: __3.16.12__

Certified mail #_____

# EL PASO ORTHOPAEDIC SURGERY GROUP
# AND CENTER FOR SPORTS MEDICINE
### 1700 Murchison
### El Paso, Texas   79902
### CLIA # : 45D1104381

---

**PATIENT ID:**          847430
**PATIENT NAME:**     RYAN DELPRATT
**DATE OF BIRTH:**     03/26/1980
**DATE OF SERVICE:**   11/29/2011
**SSN:**                   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
**PHYSICIAN:**          DAVID MANSFIELD MD
**HOME PHONE:**

---

This is an evaluation on Ryan Delprapt.

**CHIEF COMPLAINT**:
The patient's chief complaint is left hip pain.

**HISTORY**:
The patient comes to see us today.  This is a gentleman who has been having some left hip and low back pain for sometime.  He has had a previous problem with the left hip where he dislocated his left hip.  He has been having significant amount of pain in left hip since that time.  He has been told that he needs to have a left hip arthroplasty, but due to his young age, as well as incarceration, he has not been a good candidate for this.

**ALLERGIES**:
Allergies to medications are none.

**MEDICATIONS**:
Naprosyn.

**SOCIAL HISTORY**:
The patient does not smoke or drink.

**FAMILY HISTORY**:
Noncontributory.

**REVIEW OF SYSTEMS**:
No head, eyes, ears, nose, or throat problems, stomach problem or bladder problems.

**PHYSICAL EXAMINATION**:
Physical examination today reveals the patient has left leg with a serious length discrepancy.  He is using crutches to ambulate.  He does have significant amount of low back pain.  He is neurologically intact and neurovascularly intact without any evidence of complications or problems.

# EL PASO ORTHOPAEDIC SURGERY GROUP
# AND CENTER FOR SPORTS MEDICINE
### 1700 Murchison
### El Paso, Texas   79902
### CLIA #: 45D1104381

---

**PATIENT ID:**       847430
**PATIENT NAME:**     RYAN DELPRATT
**DATE OF BIRTH:**    03/26/1980
**DATE OF SERVICE:**  11/29/2011
**SSN:**              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
**PHYSICIAN:**        DAVID MANSFIELD MD
**HOME PHONE:**

---

**RECOMMENDATIONS:**
I have spoken at length to the patient.  I explained to him he does have a surgical
lesion.  We will see him back in one month or earlier if he has any problems or
questions.  Continue the pain medication.

---

David J. Mansfield, M.D.

DJM:ft/lv
VF: DJM3_0818

*Enforcement and Removal Operations*

**U.S. Department of Homeland Security**
1545 Hawkins Boulevard.
El Paso, TX 79925



**U.S. Immigration
and Customs
Enforcement**

Marisel Rodriguez
Attorney at Law
4526 Hoxie Street
Bronx, New York 10470

Re:  Ryan Andre Omar DELPRATT, A047 112 230

Dear Ms.  Rodriguez,

  I received your letter dated November 29, 2011, in which you request that your client, DELPRATT, Ryan Andre Omar, be Paroled or released based on his current medical condition.

  The Physician Network Association (PNA) was contacted about your client's medical status.  PNA states that your client is receiving adequate care for his medical condition.  PNA states that your client receives the proper medication and he has been seen both on sick call and by a medical provider.  PNA further stated that your client had an Orthopedic appointment on November 29, 2011, and any further action is pending recommendation from the Orthopedic doctor if any.  Based on PNA statements and evaluations, there is no medical reason for the release of your client.

  In consideration, I do not see an imperative need to release your client. Therefore, your request is hereby denied.

  For inquires related to your client's case, please contact Deportation Officer Jonathan D. Freedman at 915-834-4817.

Sincerely,

Raymond Morris
Acting Assistant Field Office Director



# MARISEL RODRIGUEZ, ESQ.

3

---

November 29, 2011


Re: Ryan Andre Omar Delpratt A#047-112-230


Dear Supervisor Raymond Morris:

I represent the above named respondent who is currently detained by DHS-ICE at the Otero Detention Center in Otero, New Mexico. (G-28 attached).  My client has been detained for approximately 6 months. His immigration matter is currently pending before the El Paso Immigration Court.

I am writing to request parole/release for my client.  He has been suffering for months due to a medical issue that cannot be properly cared for at the detention center.  If you recall, I spoke to you about his medical issues and need for immediate medical attention on November 2, 2011.

After several requests to be seen by a doctor, he was finally evaluated by a physician at the detention center. It was determined at the visit that he had a broken bone in his pelvis/hip area and that his hip is dislocated and deformed. In fact, one of his legs is several inches shorter than the other one. He was then advised that he needs immediate surgery, something that cannot be provided to him while detained. He is surviving only on some painkillers they have prescribed to him which only slightly alleviate the excruciating pain he is in.

My client was advised because of his medical needs, he is eligible for release. He has an LPR wife, USC children, and other immediate family members who are USC. He was employed and supporting his family before his detention. (See documents attached) He has every reason to properly resolve his immigration matter and is therefore not a flight risk. Although he has convictions, they are very minor, only two, and for non-violent offenses. He is not a threat to public safety. His medical situation is very serious and he needs surgery as soon as possible. Since DHS cannot properly care for him, release is warranted.

The determinations regarding his medical needs were made by the detention center's medical personnel. They would have all the necessary documents to show his condition. Should your office require any documents from me, I can be contacted at (718)791-3844 or by email.

A prompt response to this request is needed and would be greatly appreciated.

Sincerely,

Marisel Rodriguez, Esq.

4526 Hoxie Street
Bronx, New York 10470

E-mail: MariselRodriguezEsq@gmail.com
Phone number: (718) 791-3844
Fax number: (646) 390-7379

3

Regardless, I am writing because clearly my client's case was serious enough for PNA to refer him to an orthopedic surgeon. Your letter does not indicate the result of that visit and what recommendations, if any, were in fact made. Since my client has indicated there was a recommendation for surgery, I am asking for your office to review the file again. He also indicated he was prescribed several medicines which, nearly a week and a half later have not been filled/given to him. I do not think I need to discuss the liability your office is susceptible to if it is determined inaction by your officials led to, or further damaged his back/spinal condition. I understand your office must follow protocol when deciding requests. I respect the process and understand the need for its existence but not all deserve to be thrown to the side like garbage.

I respectfully request your office discuss his condition with the orthopedic surgeon and then make a determination based on his recommendation. A prompt response to this request would be greatly appreciated.

Sincerely,

Marisel Rodriguez, Esq.



cc:   Field Director – ICE
      245 Murray Drive, SE
      Building 410
      Washington, DC 20538

 **Law Offices of MARISEL RODRIGUEZ, ESQ.** *H*

December 8, 2011

Enforcement and Removal Operations
USDHS - ICE
1545 Hawkins Boulevard
El Paso, Texas 79925

Re: Ryan Andre Omar Delpratt
A#047-112-230

Dear Acting Assistant Field Office Director Morris:

I am in receipt of your denial of my November 29, 2011 request for parole/supervised release of my above stated client.  In the denial letter, you indicated my client was seen by an orthopedic doctor and that "any further action is pending recommendation from the orthopedic doctor if any." *See copy of denial letter attached.*  I spoke with my client today and he informed me he was seen by Dr. Mansfield from the El Paso Orthopedic Center.  Dr. Mansfield indicated to my client 1) his spinal cord/spine is injured; 2) my client should **not** walk since walking will only exacerbate the condition; and 3) immediate surgery **is** necessary.[1]  In addition, as I indicated before, my client informed me he was advised he has a broken bone in his pelvis/hip area and his hip was deformed.

As suggested by your letter, I contacted Deportation Officer Jonathan D. Freeman. DO Freeman could not have been any ruder. He was disrespectful, words were exchanged, and our conversation was completely unproductive.  I understand ERO must receive hundreds of requests for parole/release, most based on false or exaggerated claims. This does not mean officers should assume they are all fake and dismiss them as rants by crazy immigrants.  DO Freeman's disgust was palpable as he spoke about my client. It was almost as if he was offended I dared to call him about the issue. He did not allow me to speak, jumped down my throat, accused me of "obviously not understanding what he was telling [me]", and then snidely advised me that if I did not like the way he was talking to me, I could file a complaint, which lets me know he is confident the complaint will fall on deaf ears.

---

[1] Please be advised my request is based on information I have obtained from my client and his family. I do not have access to his medical records from the doctors he has seen while detained by immigration.

4526 Hoxie Street
Bronx, New York 10470

E-mail: MariselRodriguezEsq@gmail.com
Phone number: (718) 791-3844
Fax number: (646) 390-7379

**MSHU  Cell #:**   A-9
**Medical Cell#** _____
_____

## Administrative Segregation Order

**To: SPECIAL HOUSING UNIT**

**From:** _____ Galaviz _____   **Title:**   **Sergeant** ___

**Detainee:** _____ Delpratt, Ryan _____   **Detainee#** ___ A047112230 ___

The above named Detainee is to be admitted to Administrative Segregation for the following reason(s):

___**x**___ (A) Is pending an investigation/ hearing for the commission of a prohibited act or rule violation and requires pre-hearing detention.
_____ (B) Is under medical observation (medical staff must comment and sign this order.)
_____ (C ) Is pending a transfer or release within 24 hours.
_____ (D) Is terminating confinement in Disciplinary Segregation and has been ordered in Administrative Segregation by the Disciplinary Captain.
_____ (E) Is a security risk to him/herself or the security of the facility.
_____ (F) Detainee has requested admission to Protective Custody.
_____ (G) Overflows
_____ (H) Administrative Segregation
**I hereby request placement in the Administrative Segregation Unit for my own**
I do ( ) do not ( ) request a hearing concerning my segregation.
**Detainee:** _____   **#:** _____   **Date:** _____

Detainee Delpratt, Ryan A047112230 was placed in the special housing unit pending investigation.

**Medical Officer:** _____

**Admitted by:** ___ *LTKUS* K. Stickel ___   **Title:** ___ **Lieutenant** ___

**Detainee  Signature:** *Detainee Refused to sign*   **Time:** ___ *1009* ___

**Admitted Date:** ___ 11/3/2011 ___   **Time:** ___ 0853 HRS ___

**Released by:** _____   **Title:** _____

**Released Date:** _____   **Time:** _____

# OTERO COUNTY PROCESSING CENTER

**Institutional Disciplinary Panel Hearing Report**          **Report # 1311**

| | | | |
|---|---|---|---|
| Detainee Name: | Delpratt, Ryan | I.D. Number | A047112230 |
| Date of Incident: | 11/3/2011 | Charge(s) 307/308/398 | |

## I. Notice of Charge(s)

A. Advance written notice of charge(s), (copy of Incident Report), was given to the detainee on _____ 11/3/2011 _____ at _____ 2230 _____

B. The DHO hearing was held on _____ 11/5/2011 _____ at _____ 1530 _____

   C. The detainee was advised of his/her rights before the hearing by _____ Sgt. Cardoza, J. _____

On _____ 3-Nov-11 _____ a copy of the advisement of rights form was attached.

## II. Staff Representative:

Detainee did/did not require representation: _____ Rubio, A. _____ appeared.

## III. Detainee Plea:          Guilty _____          Not Guilty _____ X _____

   A.   Detainee's Statement:

   Detainee Delpratt, R A# 092378221 stated that he was in to much pain to walk  and he

   tried to  explain to the officer and the sergeant. He stated that he did not refuse orders.

   B.   Witnesses Called:

   None

## IV. Findings:

**The detainee was found** _____ X _____ **Guilty** _____ **Not guilty of the following charges.**

   307-308-398

## V. Specific evidence relied upon to support findings:

   Incident of Prohibited Act, officer's statement, detainee's statement.

## VI. Sanction(s) or action(s) taken:

   10 days SHU/no commissary/property restriction/starting 11-05-11 thru  11-15-11

## VII. Reason for sanction(s) or action(s) taken:

Incident did occur. Detainee  refused staff members orders. Dr. Walls verfied that

detainee can walk and was cleared to leave infirmary and be housed in general population.

Detainee was calm during investigation. Detainee was issued a handbook that explains the rules

of the facility.

Lieutenant Signature _____ IDP Member _____          IDP Member _Cardoza o J 0904_

## VIII. Review and Concur:

A. Concur: _____ Terminate: _____ Alter: _____

Signature: _____ Date: _____ Time: _____

Copy delivered to detainee by: _____ on _____

MSHU CELL#: A-9

**Disciplinary Segregation Order**

**To: SPECIAL HOUSING UNIT   Date/Time of incident: 11-03-2011/ 0845 hours**

**From: Lt. Clarke, M.**

**Detainee: Delpratt, Ryan**                           **A#047112230**

A hearing before the IDP/DHO was conducted on date 11-05-11.

The above named detainee was found to have committed the specified prohibited act(s) listed below.

        PROHIBITED ACT(S): 307: Refusing to obey a staff member/officer's order. 308: Insolence towards a staff member. 398: Interfering with a staff member in the performances of duties.

                                                **03 DAYS**

**Below is a brief outline of special instructions and/ or information:**

 03 Days Disciplinary Segregation 03 No commissary/No property  starting 11-05-11 ending 11-08-11.

**Admitted disciplinary date: 11-05-11**            **Disciplinary time: 1530 hours**

**Release by: _____**            **Time:_____**

                **(Officer & Title)**

**Released date:_____**

**Comments:_____**

**MSHU  Cell #:**  A-4
**Medical Cell#**

**Administrative Segregation Order**

## To: SPECIAL HOUSING UNIT

**From:** _____ T. Smith _____ **Title:** **Sergeant**

**Detainee:** **Delpratt, Ryan** **Detainee#** **A047112230**

The above named Detainee is to be admitted to Administrative Segregation for the following reason(s):

_____ (A) Is pending an investigation/ hearing for the commission of a prohibited act or rule violation and requires pre-hearing detention.

_____ (B) Is under medical observation (medical staff must comment and sign this order.)

_____ (C ) Is pending a transfer or release within 24 hours.

_____ (D) Is terminating confinement in Disciplinary Segregation and has been ordered in Administrative Segregation by the Disciplinary Captain.

_____ (E) Is a security risk to him/herself or the security of the facility.

_____ (F) Detainee has requested admission to Protective Custody.

_____ (G) Overflows

____x____ (H) Administrative Segregation

**I hereby request placement in the Administrative Segregation Unit for my own**
I do ( ) do not ( ) request a hearing concerning my segregation.
**Detainee:** _____ **#:** _____ **Date:** _____

Detainee Delpratt, Ryan A#047112230 was placed in the special housing unit under Administrative Segregation..

**Medical Officer:** _____

**Admitted by:** _____ L. Belvin _____ *1/12/11/78* **Title:** _____ **Lieutenant** _____

**Detainee  Signature:** *Refused to sign* **Time:** _____ 0538 HRS _____

**Admitted Date:** _____ 11/12/2011 _____ **Time:** _____ **1905 HRS** _____

**Released by:** _____ **Title:** _____

**Released Date:** _____ **Time:** _____



EL PASO TX 799
MON 19 MAR 2012 PM

RECEIVED
At Albuquerque NM

MAR 21 2012

MATTHEW J. DYKMAN
CLERK

Ryan andre omar Delymott
796 Mc gregor Range Road
Chaparral, New mexico 98081
Otero county processing center
A#047-112-230 D-8

United State District Court
District of New Mexico
Office of The Clerk
Suite 270
333 Lomas Blvd, N.W.
Albuquerque, New Mexico 87102